# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                                                                              18-CR-1572 WJ

LEE ANDREW CLINES,

      Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING DEFENDANT'S MOTION FOR PRODUCTION OF DISCOVERY

THIS MATTER comes before the Court upon Defendant's Opposed Motion for Production of Discovery Pursuant to Rule 16, *Giglio v. U.S.* and *Brady v. Maryland,* filed October 1, 2018 **(Doc. 25)**. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.

**BACKGROUND**

Defendant Clines is charged with possession and distribution of cocaine. In this motion, he seeks any video and audio recordings taken by DEA Special Agent Jarrell Perry ("Agent Perry") on April 23, 2018 while he was at the Amtrak station. Defendant, who is African-American, was traveling with a female African-American companion on an Amtrak train from California to Kansas and made a stop at the Amtrak station in Albuquerque, New Mexico on April 23, 2018. On that day, Agent Perry boarded the coach and questioned the passengers. After obtaining consent, he searched Defendant's bag and recovered suspected cocaine from underneath the soles of a pair of boots.

**DISCUSSION**

**I.     Relevant Law**

In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." The standard for determining materiality for Brady purposes is well established. Under *Brady*, the "touchstone of materiality is a 'reasonable probability' of a different result," which exists "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Trammell v. McKune*, 485 F.3d 546, 551 (10th Cir. 2007). "The question is not whether the defendant would more likely than not receive a different verdict with the evidence, but whether in its absence he would receive a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (citing *Bagley*, 473 U.S. at 678). The prosecution has an affirmative duty to disclose exculpatory evidence clearly supporting a claim of innocence even without request." *United States v. Summers*, 414 F.3d 1287, 1304 (10th Cir. 2005). Failure to disclose impeachment evidence violates *Brady* when a witness's credibility is material to the question of guilt. *United States v. Buchanan*, 891 F.2d 1436, 1443 (10th Cir. 1989).

The Government's duty includes "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 434 & 437 (1995); see *U.S. v. Velarde*, 485 F.3d 553, 559 (10th Cir. 2007). The prosecutor has a duty to disclose *Brady* evidence even if they do not personally know of the evidence. *Velarde*, 485 F.3d at 559. The prosecutor's duty encompasses impeachment evidence as well as exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985); *Nuckols v.*

*Gibson*, 233 F.3d 1261, 1267 (10th Cir. 2000); *see also Giglio v. United States*, 405 U.S. 150, 153 (1972) (prosecution's disclosure obligation extended to evidence that is useful to the defense in impeaching government witnesses, even if the evidence is not inherently exculpatory

*Rule 16*

Fed.R.Crim.P.16 (1)(1)(E) requires the Government to disclose "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items" that are material to preparing the defense, as well as reports of examinations and tests. Rule 16(a)(1)(E(i) & (F)(iii). Rule 16 is "broader than *Brady*" in that it mandates disclosure of any material information, whether exculpatory or not. *U.S. v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013). The materiality requirement is not a heavy burden; rather, evidence is material as long as there is a strong indication that the evidence "will play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Lloyd*, 992 F.2d 348, 350-51 (D.C. Cir. 1993). Nevertheless, ordering the production by the government of discovery without any preliminary showing of materiality is inconsistent with Rule 16. *See United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990).

Under Rule 16, the "materiality" standard is "not a heavy burden" and means that there is a strong indication that the evidence will "play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *U.S. v. Felt*, 491 F.Supp. 179, 186 (D.D.C. 1979); *U.S. v. Lloyd*, 992 F.2d 348, 353-53 (D.C.Cir. 1993) (remand in case of aiding and abetting of false tax returns of government witnesses since similarities might have tended to show that falsities originated with tax payer instead of defendant).

## II. Analysis

As part of its discovery disclosure, the United States produced Agent Perry's report and an audio recording of the encounter with Defendant. The audio tape that the Government produced contains the encounter with Defendant and his travelling companion. Defendant believes that Agent Perry and TFO Chavez made other audio recordings on April 23, 2018 which Defendant believes consist of conversations with other passengers, but the Government has not produced these tapes. Defendant claims that he and his companion, who were the only African-Americans on the train car, were subjected to more extensive questioning that other passengers and contend that Agent Perry and TFO Chaves have a pattern and practice of imposing a higher level of scrutiny and questions on non-white passengers while conducting drug interdiction at the Albuquerque Amtrak and Greyhound stations.

The Government acknowledges its obligations under *Brady, Giglio* and Rule 16 but contends that Defendant's request is moot, explaining that Agent Perry generally does not retain audio recordings of encounters with passengers who were not arrested and who did not have contraband items. Thus, no other Amtrak passenger recordings exist from April 23, 2018, and there are no additional recordings to disclose to Defendant. According to the Government, both Defendant his companion K.W. gave consent to have their belongings searched. While Agent Perry interacted with K.W., Defendant began removing items within his bag, and Agent Perry advised Defendant that he did not have to remove items from his bag. K.W. was not carrying contraband, but because Agent Perry found cocaine bundles hidden in Defendant's pair of boots, the recording of this encounter was retained and later disclosed to Defendant on May 22, 2018.

The Court finds no reason to infer an untoward motive from Agent Perry's retention practice for recordings made while questioning bus or train passengers. Nevertheless, Defendant

claims that Agent Perry "now destroys the evidence that he knows the Court will rely on to find that, once again, he has conducted an illegal investigation." Doc. 41 at 1. This statement makes no sense for at least three reasons:

(1) it assumes Agent Perry's investigation was illegal—which the Court has not determined here at all;

(2) Defendant suggests that Agent Perry is clairvoyant and would have or should have known that Defendant would be later claiming that he and his companion were additionally questioned because they are African-American—in which case, Agent Perry would have known to keep the recordings of everyone riding the train car; and

(3) the only way to resolve Defendant's destruction-of-evidence challenge is for Agent Perry to change the retention practice for audio recordings so that they are kept for every bus or train passenger in the event that a non-white individual is arrested—just in case that individual challenges Agent Perry's procedure on a racial profiling level.

Defendant provides the Court with no reason either to order the Government to produce material that does not exist or to find any discriminatory purpose behind Agent Perry's practice of not keeping recordings of individuals who are questioned at the Greyhound and Amtrak stations but are not arrested.

In his reply, Defendant contends that the search was not voluntary because Agent Perry's conduct was deceptive. However, for purposes of this motion seeking discovery, the Court need not consider these arguments and reserves discussion on the legal integrity

of the search until such time as the Court addresses Defendant's pending motions to suppress. *See* Docs. 31 and 32.[1]

**THEREFORE,**

**IT IS ORDERED** that Defendant's Opposed Motion for Production of Discovery Pursuant to Rule 16, *Giglio v. U.S.* and *Brady v. Maryland* **(Doc. 25)** is hereby DENIED for reasons described in this Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] The Court makes one other observation: Defendant claims that DEA agents, including Agent Perry, have a "pattern and practice of placing additional scrutiny on non-white passengers" while conducting searches at the bus and train terminals. Doc. 25 at 3, ¶10. Defendant asserts racially-based conduct but these are insufficient to support a selective enforcement claim, which belongs to its own class and requires much more burdensome discovery and "demanding" standards of proof. Defendant's attempt to raise such a claim here would be an attempt to make an end-run around these requirements. *See, e.g., U.S. v. Jackson*, No. 16cr2362 WJ, Doc. 137; and *U.S. v. Coleman*, No. 16cr2363, WJ, Doc. 134.