IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                                   18-CR-1572 WJ

LEE ANDREW CLINES,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR DISMISSAL OR SUPPRESSION OF EVIDENCE
## BASED ON SPOLIATION

THIS MATTER comes before the Court upon Defendant's Motion for Dismissal or Suppression of Evidence Based on Spoliation by the Case Agent, filed October 29, 2018 (**Doc. 32**).[1] Having reviewed the parties' briefs and applicable law, as well as the evidence and testimony presented at a hearing on the matter, the Court finds that Defendant's motion is not well-taken and, therefore, is denied.[2]

## BACKGROUND

Defendant Clines is charged with possession and distribution of cocaine. The drugs were found as a result of a search conducted by DEA Special Agent Jarrell Perry ("Agent Perry") on April 23, 2018 on board a train which was stopped at the Albuquerque Amtrak station. After obtaining consent, Agent Perry searched Defendant's bag and recovered suspected cocaine from

---

[1] The Court held a hearing for this motion and Defendant's motion to suppress evidence (Doc. 31). While there was no separate argument or evidence presented as to this motion, the Court finds that the evidence presented on the motion to suppress was helpful, particularly Agent Perry's testimony regarding his usual practices in conducting such encounters on Amtrak trains.

[2] The parties did not offer separate oral argument on this motion, but evidence was presented at the hearing that was relevant to this motion as well as to Defendant's motion to suppress. (Doc. 31).

underneath the soles of a pair of boots. In this motion, Defendant seeks any video and audio recordings taken by DEA Special Agent Jarrell Perry ("Agent Perry") while he was at the Amtrak station on that day.

**DISCUSSION**

**I.      Relevant Law**

"The Due Process Clause imposes duties on the government not to deprive a defendant of exculpatory evidence." *United States v. Harry*, 816 F.3d 1268, 1276 (10th Cir. 2016). In *Brady v. Maryland*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).

In *California v. Trombetta* and *Arizona v. Youngblood,* 488 U.S. 51 (1988), the Supreme Court set out a two-part test regarding the Due Process Clause and the government's destruction or loss of evidence. The Government violates a defendant's right to due process when: (1) it destroys evidence whose exculpatory significance is "apparent before" destruction; and (2) the defendant remains unable to "obtain comparable evidence by other reasonably available means." *See United States v. Bohl*, 25 F.3d 904, 909 (10th Cir. 1994) (citing *Trombetta* at 489). If, however, the exculpatory evidence was not apparently exculpatory but merely "potentially useful," the failure to preserve the evidence does not violate due process unless the defendant can show bad faith on the part of the police. *Id.* (citing *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). In other words, the United States' duty to preserve extends only to evidence that "might be expected to play a significant role in the suspect's defense." *Id.* Defendant bears the burden of showing that the missing evidence met that standard when it was lost. *See United States v. Gomez*, 191 F.3d

1214, 1218 (10th Cir.1999). The bad faith inquiry must "necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* (citing *Youngblood*, 488 U.S. at 56 n.* (citations omitted).

The Government contends that it is not clear whether such recordings exist in the first place and even assuming that they do exist and were later deleted, Defendant has not met his burden to show the recordings contained exculpatory evidence.

## II. Analysis

At the hearing, Agent Perry offered testimony regarding his usual custom and practice of recording consensual encounters on Amtrak trains and Greyhound buses. He stated that he records all such encounters, but his digital recorder is not turned on while waiting for passengers to board, as that wastes battery and space on the recorder. Agent Perry stated that he does not keep recordings except for those that led to an arrest. If there was no seizure or arrest, the recording is erased. His practice is to delete the non-arrest recordings as soon as he gets into his car, and then immediately download the arrest recording. Agent Perry believed he spoke with one other passenger on the train that day, but could not specifically recall how many other passengers he may have questioned. He had boarded the train by himself that day, which would have limited the number of passengers he could have encountered.

The Court finds Agent Perry's testimony to be credible and finds there is no merit to this motion for several reasons:

(1) Even if recordings of other encounters were made on April 23, 2018, there is no evidence that they still exist. By Agent Perry's own testimony, they would have been deleted as a matter of course, since Defendant was the only arrest he made that day.

(2) It is difficult to understand how the recordings could support Defendant's motion to suppress. Defendant fails to show that any such recordings would have contained exculpatory evidence that "might be expected to play a significant role" in his defense, and Defendant offered no further argument on this issue at the hearing. There is also no evidence that Defendant or Ms. Watkins overheard any encounters that may have occurred, much less that they would have contained exculpatory material.

(3) Defendant suggests that Agent Perry (and by extension, the Government), should have known it would have to litigate this case. *See* Doc. 32 at 8 ("SA Perry knew that in arresting the Defendant, the United States would likely be required to litigate the totality of the circumstances involving his drug interdiction activities" leading to the arrest). However, the question then becomes: how long should Agent Perry keep those recordings, simply on the chance that a defense attorney may one day seek those recordings in discovery (even assuming they would be relevant and discoverable). The relevant case law and precedent does not support the rather preposterous idea that because Agent Perry's searches are commonly challenged by criminal defendants, Agent Perry is required to hold onto all digital recordings of encounters for days on which he makes an arrest.

Defendant contends that Agent Perry was "on notice" of the exculpatory nature of Agent Perry's recordings because of because of two district court rulings by United States District Judge Martha Vazquez which granted defendants' motions to suppress where Agent Perry had made the arrests. One case is *U.S. v. Easley,* 293 F. Supp. 3d 1288, 1304 (D.N.M. 2018), in which United States District Judge Martha Vazquez concluded that defendant's consent was coerced because defendant, as a black woman, would not have felt free to refuse Agent Perry's request to search. *See* Doc. 32 at 9 (Agent Perry "would therefore have been on notice [that the recordings] would

illuminate the same facts that were litigated in in *Easley*."). Defendant claims that in *Easley,* Agent Perry "apparently recorded and produced all of his interactions with the other passengers on the bus with the defendant." Doc. 32 at 9. However, *Easley* does not support Defendant's position at all because (1) there is no mention at all of any recordings in Judge Vazquez' opinion; and (2) after briefing was completed on the instant motion to suppress, the decision was reversed by the Tenth Circuit. *See United States v. Easley*, 911 F.3d 1074, (10th Cir. 2018).

The other case on which Defendant relies on to argue that Agent Perry had notice of exculpatory value of the recordings is *U.S. v. Garcia-Garibay*, 17CR00691 MV Doc. 61, filed 8/14/18 at 4. In this case, Judge Vazquez expressed concern about Agent Perry's practice of turning the recording device on and off during the encounter which left gaps which the court felt may have included additional relevant exchanges. However, the motion to suppress was not granted on the basis of incomplete recordings, but rather on the following: (a) defendant in that case had declined to be searched four times, which rendered involuntary defendant's subsequent consent to the dog sniff was involuntary; (b) Agent Perry continued to ask questions about what he was carrying in his belongings; and (c) Agent Perry's prolonged retention of defendant's identification card; *Id.* at 19. Defendant's reliance on these cases is misleading. Neither case supports Defendant's argument on spoliation of evidence and neither case sheds light on why there would be any exculpatory value in any recordings that might have been made on April 23, 2018.

(4) Finally, even if the Court assumes Perry made such recordings and later deleted them, Defendant has not shown that the destruction was done in bad faith. Agent Perry has a legitimate reason for not saving all recordings of every encounter with train passengers. The alternative— saving every recording—is outlandish, considering the number of encounters Agent Perry has on a workday. Moreover, Agent Perry's reasons for destroying the recordings are similar to those

5

reasons are similar to reasons upheld as legitimate by the Tenth Circuit. In *U.S. v. Harry,* 816 F.3d 1268, the Tenth Circuit affirmed the district court's finding of no bad faith in the Government's failure to preserve a witness' outgoing texts to defendant in a sex abuse prosecution because the exculpatory value of those texts was not apparent before their loss. In that case, the lost texts would have purportedly suggested that the victim had been flirting with the defendant. However, there was no reason to preserve the texts because (1) the defendant denied entering the woman's bedroom; (2) the witness did not express any sympathy for defendant during his interview with the investigator; and (3) defendant's other messages to the witness were clearly incriminating. Thus, there was no reason to believe that the witness had received exculpatory texts and as a result, no bad faith in their destruction.

In another case, *United States v. Gutierrez*, the court found that the Government's destruction of evidence did not warrant dismissal of a charge of being a felon in possession of a firearm because the exculpatory value was not apparent and also because there was no showing of bad faith. 415 F. App'x 870, 873 (10th Cir. 2011). The defendant in *Gutierrez* argued that a destroyed videotape would have shown the crash into the wall and him leaving the car without a gun in his hand, thus corroborating his defense. The court found it unlikely that the tape contained any exculpatory evidence since according to the testimony presented, the videotape did not actually show defendant's exit from the car. *Id.* at 873. Examining the *Youngblood* factors for bad faith, *see id.* at 875, the court found that those factors weighed in favor of the Government. Defendant also claimed bad faith on the part of the Government because he "generally felt targeted" by the police. *Id.* The court rejected this argument, noting that the defendant likely "had drawn the attention of the local police department given his criminal record." *Id.*

**THEREFORE,**

6

**IT IS ORDERED** that Defendant's Motion for Dismissal or Suppression of Evidence Based on Spoliation by the Case Agent **(Doc. 32)** is hereby DENIED for reasons described in this Memorandum Opinion and Order.

_____
CHIEF UNITED STATES DISTRICT JUDGE